COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

HUMBERTO CHAVIRA,                                     )

                                                                              )             
No.  08-04-00132-CR

Appellant,                          )

                                                                              )                   Appeal from the

v.                                                                           )

                                                                              )              
243rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20030D06197)

 

 

O
P I N I O N

 

Humberto Chavira
appeals his conviction for robbery.  A
jury found him guilty as charged in the indictment.  The trial court assessed punishment at 10
years=
imprisonment, probated to 10 years=
of community supervision, and imposed a fine of $500.  In his sole issue, Appellant challenges the
factual sufficiency of the evidence to support his conviction.  We affirm.








On October 10
2003, around 1 p.m., Melissa Esparza walked to American Cash Express near
Alameda and Croom to cash her paycheck and then went grocery shopping nearby at
the Family Dollar in the Hidden Valley Shopping Center.  She purchased a bottle of water from another
store and then began walking home.  Ms.
Esparza had the cash in her black purse and was carrying three or four shopping
bags.  As she was walking, she felt
someone pulling her purse and when she turned around she saw a man wearing a
cap tugging on her purse.  He was
straddling a black lowrider bicycle.  The
man rode past her, but stopped when she held onto her purse.  Then he dropped the bicycle and grabbed Ms.
Esparza=s by the
hair.  Then he grabbed Ms. Esparza
and threw her to the ground.  The
attacker hit her head against the ground three times.  Ms. Esparza gave up and let go of her
purse.  Ms. Esparza noticed tattoos on
the man=s arms
and saw his face.  Ms. Esparza was still
laying on the ground when the man ran away with her purse and carrying his
bicycle.  Ms. Esparza positively
identified Appellant in the courtroom as the man who had attacked her and had
taken her purse.

The same day,
Jesse Macias was working at Auto Planet on Alameda.  About 1:30 p.m., he saw a man running from
the back of the business=
lot toward the exit.  The man was running
alongside his bicycle and was carrying a small black purse.  Mr. Macias described the individual as a
dark-complected Hispanic male, five feet six inches tall, with tattoos on his
forearms.  The man was wearing a black
baseball cap but Mr. Macias was not able to distinguish the man=s face. 
Five minutes later, a police officer came by and Mr. Macias reported
what he had just seen.

After the attack,
Ms. Esparza went to a nearby house and called the police.  At 1:45 p.m., Officer Sergio Diaz was
dispatched in reference to a robbery. 
Officer Diaz arrived within three minutes of the call and observed that
Ms. Esparza was hysterical and crying. 
Officer Diaz obtained information and put out a spot broadcast to locate
the suspect.  About ten officers and a
helicopter unit canvassed the area for about thirty minutes, but did not locate
the suspect.








Ms. Esparza gave a
statement to Officer Ricardo Elias on October 16.  In her statement, Ms. Esparza told the
officer that her assailant was a dark-complected Hispanic male about five feet
three inches to four inches in height. 
Based on witness interviews, Officer Elias put together a composite
description of the suspect.  Eight or
nine days later, he was notified by another officer of two suspects arrested in
another case and he constructed a six-person photo lineup.  Officer Elias contacted Ms. Esparza and sent
an officer to her house to show her the photo lineup on November 4.  Ms. Esparza looked at the photo lineup and immediately
identified the photo of Appellant as being her assailant.

Richard Zamora
testified on behalf of Appellant=s
defense.  He has known Appellant since he
was five years= old and
considers him a good friend.  On October
10, 2003, Mr. Zamora was living on Bowen Road in El Paso, Texas with his
parents.  That day, he slept in late and
woke up at noon to get ready for work. 
His shift started at 3 p.m. and he left for work around 2:30 p.m. As he
was leaving, Mr. Zamora saw Appellant working in the yard, which was a routine
job that Appellant did for Mr. Zamora=s
parents.  Mr. Zamora remembered the day
because the following day was his twenty-first birthday and Appellant was doing
yard work in preparation for a planned birthday party.

According to Mr.
Zamora, his house on Bowen is about three miles from the intersection of
Alameda and Croom.  Mr. Zamora stated
that Appellant was not riding a bicycle back in October and has not ridden one
for three years.  He agreed that it was
possible that someone riding a bicycle could reach his house within fifteen to
thirty minutes from the Hidden Valley Shopping Center on Alameda.  Officer Elias had earlier testified that
Bowen is a quarter of a mile or half a mile away from the Hidden Valley
Shopping Center on Alameda.  According to
Officer Elias, someone could easily walk the distance and if traveling by
bicycle, it would take someone six or seven minutes to ride from the Family
Dollar vicinity to Bowen Street.








Sylvia Zamora,
Richard Zamora=s mother,
testified that Appellant routinely cut the grass at her house on Bowen in
2003.  She has known Appellant since he
was three years=
old.  Appellant was scheduled to do yard
work on October 10, 2003 because her son=s
birthday was the next day.  Mrs. Zamora
wanted Appellant to fix up the front, back, and side yard because some of her
son=s friends would be coming over to
visit.  Appellant arrived at her house
around 11:30 a.m.  She was at home the
entire time Appellant worked in the yard. 
Appellant worked for about two to two and a half hours, which included
the hour between 1 and 2 p.m.  Mrs.
Zamora used to work at the Family Dollar in the Hidden Valley Shopping
Center.  According to Mrs. Zamora,
it takes thirty to forty-five minutes to drive to the Family Dollar from her
house.  Mrs. Zamora agreed that Appellant
has a tattoo on his left forearm.  She
has never known Appellant to ride a bicycle.

In his sole issue,
Appellant contends that the evidence is factually insufficient to support his
conviction.  Specifically, Appellant
complains that Ms. Esparza=s
confident eyewitness identification, a form of evidence which is generally
unreliable, provided the only eyewitness testimony identifying Appellant as the
perpetrator of the offense.  Appellant
also asserts that Ms. Esparza=s
confident identification was significantly undermined by the inconsistencies
within her testimony and due to the stressful nature of her brief encounter
with the attacker.

Standard
of Review








Appellant does not
challenge the legal sufficiency of the evidence.  A factual sufficiency review of the evidence
begins with the presumption that the evidence supporting the conviction was
legally sufficient.  See Clewis v.
State, 922 S.W.2d 126, 129, 134 (Tex.Crim.App. 1996); Moore v. State,
140 S.W.3d 720, 726 (Tex.App.--Austin 2004, pet. ref=d).  In reviewing the factual sufficiency of the
evidence, we must determine whether considering all the evidence in a neutral
light, the jury was rationally justified in finding guilt beyond a reasonable
doubt.  Zuniga v. State, 144
S.W.3d 477, 484 (Tex.Crim.App. 2004). 
Evidence can be factually insufficient if the evidence supporting the
verdict, considered by itself, is too weak to support the finding of guilt
beyond a reasonable doubt, or contrary evidence is so strong that guilt cannot
be proven beyond a reasonable doubt.  Id.
at 484-85.  Our evaluation should not
intrude upon the fact finder=s
role as the sole judge of the weight and credibility given to any witness=s testimony.  See Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997).  We will not set
aside the judgment unless the evidence supporting the verdict is so weak as to
be clearly wrong and manifestly unjust.  Zuniga,
144 S.W.3d at 481.  A clearly wrong and
manifestly unjust verdict occurs where the jury=s
finding Ashocks
the conscience@ or Aclearly demonstrates bias.@ 
Id.  An opinion addressing
factual sufficiency must include a discussion of the most important and
relevant evidence that supports the appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

In this case, Ms.
Esparza, the complaining witness, positively identified Appellant in the
courtroom as the man who attacked her and took her black purse on October 10,
2003.  She had no doubt that Appellant
was the perpetrator of the offense.  She
stated that she saw his face and noticed tattoos on his arms during the
struggle for her purse.  There was also
evidence that Ms. Esparza had immediately identified Appellant=s photo in a six-person photo lineup
shown to her on November 4.  In her
police statement, Ms. Esparza described her assailant as a 








dark-complected Hispanic male about
five feet three or four inches in height. 
Ms. Esparza saw her assailant leave the scene by climbing over a wall,
carrying the bicycle and her purse. 
Another witness, Jesse Macias, was working at a nearby business and
noticed a man running alongside a bicycle and carrying a black purse crossing
the property around 1:30 p.m.  Mr. Macias= description of the man he observed was
very similar to Ms. Esparza=s
description of her assailant, including that the individual was a
dark-complected Hispanic male, had tattoos on his forearms, had a bicycle with
him, and was wearing a cap.

Appellant asserts
that there were inconsistencies in Ms. Esparza=s
testimony concerning whether or not the robber was still riding the bicycle
when he grabbed her hair and about the height of the wall.  He contends that such inconsistencies
destroyed her credibility.  However, it
was within the jury=s
province to assess the credibility of Ms. Esparza and our review should not
intrude upon the jury=s
role in evaluating the weight and credibility given to any witness=s testimony.  See Cain, 958 S.W.2d at 408-09.  Appellant also asserts that Ms. Esparza
conceded that the entire incident could have taken less than a minute even
though she had originally stated it took place over five minutes, thus she may
have overstated the time she had to observe the assailant.  While Ms. Esparza did testify that the time
frame of the incident could have been three minutes or less than a minute, she
maintained that she saw the assailant=s
face and his tattoos during that time frame.








Because Ms.
Esparza identified Appellant in the photo lineup after some time had passed and
because Appellant=s photo
shows that he is not a Adark
complected@
Hispanic, Appellant argues that Ms. Esparza=s
memory had faded significantly and her identification of Appellant was tainted
by the passage of time and the intervention of a photo lineup, in which she
perhaps made the identification to satisfy the police.  Ms. Esparza=s
description of her assailant as dark complected appears to be a matter of her
opinion.  According to Ms. Esparza, she
told the officer that her assailant was AHispanic,
not that white and not that dark.@  As to the extent that her description
conflicted with the photographic evidence presented, the jury, as fact finder,
apparently resolved the conflicting testimony in favor of the State.  Likewise, the jury resolved the conflicting
alibi evidence in favor of the State. 
After considering all the evidence in a neutral light, we conclude that
the evidence was not too weak to support the guilty finding beyond a reasonable
doubt nor was the contrary evidence so strong that guilt could not be proven
beyond a reasonable doubt.  See Zuniga,
144 S.W.3d at 484-85.  Because the
evidence was factually sufficiency to support Appellant=s
conviction, we overrule his sole issue for review.

We affirm the
trial court=s
judgment.

 

 

December
1, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)